# United States District Court

## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SYNERGY STRATEGIC SOLUTIONS, LLC,<br>Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | CASE NO. 3:16-CV-2649-S |
| TOTUS SOLUTIONS, INC., BRIAN WALD,<br>JAN GAULDING, TOM SHAW, and ERIC<br>STUMBERG,<br>Defendants. | §<br>§<br>§<br>§<br>§ | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Brian Wald's Motion to Dismiss [ECF No. 98], Defendant

Eric Stumberg's Motion to Dismiss [ECF No. 100], Defendant Jan Gaulding's Motion to Dismiss

[ECF No. 101], and Defendant Tom Shaw's Motion to Dismiss [ECF No. 105]. For the reasons

that follow, the Court grants in part and denies in part Wald's, Stumberg's, and Shaw's motions,

and grants Gaulding's motion in its entirety.

### I. BACKGROUND OF THE CASE

Per Special Order 3-318, this case was transferred from the docket of Judge Sidney A.

Fitzwater to the docket of this Court on March 8, 2018.

On or about April 18, 2014, Plaintiff Synergy Strategic Solutions ("Plaintiff") and

Defendant Totus Solutions, Inc. ("Totus") entered into a Reseller/System Integrator Agreement

governing Totus's provision of various products to Plaintiff for resale to third parties (the

"Agreement"). Fifth Am. Compl. ¶ 10. Under the terms of the Agreement, Plaintiff could be

required to prepay Totus for products in the absence of an established and current line of credit

with Totus, or upon Totus requiring prepayment after notice. *Id.*

1

On or about December 7, 2015, Totus received Plaintiff's purchase order for a Hubbell Lighting Package with various products to be delivered as needed (the "Purchase Order"). *Id.* ¶ 11. On or about December 31, 2015, Totus received Plaintiff's prepayment in the amount of $319,508.98, representing 50 percent of the total amount of the Purchase Order (the "Prepayment"). *Id.* ¶ 12. Plaintiff alleges that the Prepayment was made pursuant to Totus's representations that its third-party supplier required this deposit. *Id.*

According to Plaintiff, between December 2015 and March 2016, Totus communicated regularly with Plaintiff regarding the specifics of the Purchase Order. *Id.* ¶ 13. However, Plaintiff alleges that communication subsequently decreased, and on or about July 14, 2016, Kathy Clinton, Totus's accounting manager, sent an email to Plaintiff stating that Totus had sold all of its assets and used the proceeds, including the Prepayment, to partially repay Totus's secured lender. *Id.* Plaintiff alleges that Clinton further stated that Totus had dissolved and would neither be satisfying its contractual obligations under the Agreement, nor returning the unearned portions of the Prepayment. *Id.*

On August 23, 2016, Plaintiff, by and through its counsel, sent a letter to Totus demanding that Totus remit the sum of $301,263.90, representing the unearned portions of the Prepayment that Plaintiff claims belong in equity and good conscience to Plaintiff (the "Monies"). *Id.* ¶ 14. On or about September 6, 2016, Totus, by and through its counsel, responded to the demand letter, stating that Totus had been dissolved and had no assets to satisfy a judgment. *Id.* ¶ 15.

Plaintiff alleges upon information and belief, based on Totus's communications to Plaintiff, that Totus improperly used the Monies to partially repay its secured creditor. *Id.* ¶ 16. According to Plaintiff, Totus's ledger revealed that the secured creditor was Defendant Stumberg, and that

Totus used a large portion of the Monies to make lump-sum payments to Stumberg between January 4, 2016, and January 29, 2016. *Id.*

On March 26, 2018, Plaintiff filed its Fifth Amended Complaint asserting claims for rescission of contract, breach of fiduciary duty, money had and received, fraud, negligent misrepresentation, civil conspiracy, conversion, unjust enrichment, quantum meruit, and breach of contract. Plaintiff alleges claims against Totus and Stumberg, and also seeks to impose vicarious liability by piercing the corporate veil as to certain individual employees of Totus, including Defendants Wald, President, CEO, and Director; Gaulding, Assistant Secretary and CFO; and Shaw, Vice President and President of Sales (collectively with Stumberg, the "Individual Defendants").

## II. LEGAL STANDARD

### A. The Rule 12(b)(6) Standard

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A

plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). However, the court may also consider documents outside of the pleadings if they fall within certain limited categories. First, the "court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, the "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Third, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (internal citations omitted); *see also, e.g., Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "the district court took appropriate judicial notice of publicly-available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand." (internal citations omitted)).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

### B. The Rule 9(b) Standard

Rule 9(b) requires that "[i]in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992). Put simply, 9(b) requires the "who, what, when, where, and how" of the fraud. *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

### III. ANALYSIS

Plaintiff asserts the following causes of action in the Fifth Amended Complaint: (1) rescission of contract against Totus; (2) breach of fiduciary duty against Totus and the Individual Defendants; (3) money had and received against Stumberg; (4) fraud against Totus and the Individual Defendants; (5) negligent misrepresentation against Totus, Wald, and Shaw; (6) civil conspiracy against Totus and Stumberg; (7) conversion against Totus; (8) unjust enrichment against Stumberg; (9) quantum meruit against Totus, Wald, Gaulding, and Shaw; and (1) breach of contract against Totus.

In their respective Motions to Dismiss, the Individual Defendants each move to dismiss Plaintiff's claims asserted against them pursuant to Rule 12(b)(6) for failure to state a claim. Totus has failed to appear in this action. On May 30, 2018, the Clerk of the Court entered default against Totus [ECF No. 121]. Therefore, the Court will only address the causes of action asserted against Totus to the extent that they underpin Plaintiff's causes of action against the Individual Defendants.

### A. Count II: Breach of Fiduciary Duty (Totus, Stumberg, Wald, Gaulding, and Shaw)

In Count II, Plaintiff asserts a claim for breach of fiduciary duty against Totus and the Individual Defendants. Plaintiff alleges that Totus held the Monies in constructive trust until earned, and therefore, owed Plaintiff a fiduciary duty of good faith and fair dealing. Fifth Am. Compl. ¶¶ 26-29. Plaintiff alleges that Totus breached this fiduciary duty by misappropriating the Monies and using them for Totus's sole benefit before Totus had earned the Monies through performance. *Id.* ¶ 30. Additionally, Plaintiff alleges that the Individual Defendants knowingly participated in the breach of Totus's fiduciary duty breach to Plaintiff, and therefore are each individually liable as joint tortfeasors. *Id.* ¶ 31.

The elements of a breach of fiduciary duty claim are: "(1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). A fiduciary relationship arises "where the parties are 'under a duty to act for or give advice for the benefit of another upon matters within the scope of their relation.'" *ARA Auto. Grp. v. Cent. Garage, Inc.*, 124 F.3d 720, 723 (5th Cir. 1997) (*Tex. Bank & Tr. Co. v. Moore*, 595 S.W.2d 502, 507 (Tex. 1980)). In Texas, a fiduciary relationship does not arise from a business transaction alone; rather, the relationship must exist prior to, and apart from, the business agreement. *Willis v. Donnelly,* 199 S.W.3d 262, 277 (Tex. 2006) (citing *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997)).

6

Subjective trust alone "does not, as a matter of law, transform arm's-length dealing into a fiduciary relationship." *Schlumberger*, 959 S.W.2d at 177. Parties to an arm's-length business agreement do not owe each other a fiduciary duty without evidence of a "close personal relationship of trust and confidence." *Willis*, 199 S.W.3d at 277.

Plaintiff does not allege the existence of a prior fiduciary relationship with Totus or a close and personal relationship of trust and confidence between the parties. Moreover, the terms of the Agreement between Totus and Plaintiff disclaim the creation of any joint venture or partnership between the parties. Pl.'s Ex. 1, ¶ 15.2 [ECF No. 91-1]. The Agreement states, "Customer acknowledges that any use of the term 'partner' in any marketing programs, materials, and administration does not constitute or imply a partnership or any other fiduciary relationship." *Id.*

Instead, Plaintiff alleges that Totus owed Plaintiff a fiduciary duty of good faith and fair dealing as a result of the Monies held in constructive trust by Totus. Fifth Am. Compl. ¶¶ 27-29. However, a constructive trust is an equitable remedy created by courts to prevent unjust enrichment. *Monnig's Dep't Stores, Inc. v. Azad Oriental Rugs, Inc. (In re Monnig's Dep't Stores, Inc.)*, 929 F.2d 197, 201 (5th Cir. 1991) (citing *Hudspeth v. Stoker*, 644 S.W.2d 92, 94 (Tex. App.—San Antonio 1982, writ ref'd)). In order for courts to recognize a constructive trust, the parties must already have a confidential or fiduciary relationship prior to and apart from the transaction in question. *Id.* (citing *Harris v. Sentry Title Co., Inc.*, 715 F.2d 941 (5th Cir. 1983), *modified on other grounds*, 727 F.2d 1368 (5th Cir. 1984)); *UTSA Apartments, LLC v. UTSA Apartments 8, LLC (In re UTSA Apartments 8, LLC)*, 886 F.3d 473, 488 (5th Cir. 2018). A constructive trust does not give rise to a fiduciary duty; rather, a fiduciary duty must exist prior to courts recognizing a constructive trust. Plaintiff does not allege that a fiduciary duty triggered the constructive trust; contrary to law, Plaintiff claims the inverse.

7

The Court finds that Plaintiff makes no factual allegations to support the existence of a fiduciary duty between Totus and Plaintiff. Plaintiff and Totus were engaged in an arm's-length business transaction. Plaintiff does not allege that a close and personal relationship of trust and confidence existed prior to and separate from that business relationship. Plaintiff's allegations that Totus held the Monies in a constructive trust are insufficient as a matter of law to create a fiduciary relationship between the parties. Thus, the Court finds that Plaintiff has failed to sufficiently allege the first element of its claim—the existence of a fiduciary duty.

Because Plaintiff has failed to establish more than a sheer possibility that Totus owed Plaintiff a fiduciary duty, the Individual Defendants cannot be held liable for knowingly participating in a breach of such a duty. *See Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) ("To establish a claim for knowing participation in a breach of fiduciary duty, a plaintiff must assert: (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship."). Therefore, the Court grants the Individual Defendants' Motions to Dismiss on this ground, and dismisses Plaintiff's claim for breach of fiduciary duty in its entirety.

### B. Count III: Money Had and Received (Stumberg)

In Count III, Plaintiff asserts a claim for money had and received against Stumberg. Plaintiff alleges that Stumberg holds money that belongs in equity and good conscience to Plaintiff, namely, the Monies. Fifth Am. Compl. ¶ 33. Plaintiff alleges that the Monies were improperly paid directly to Stumberg by Totus. *Id.*

"The question, in an action for money had and received, is to which party does the money, in equity, justice, and law, belong." *Staats v. Miller*, 243 S.W.2d 686, 687-88 (Tex. 1951) (quoting

58 C.J.S., Money Received, § 4a, p. 913). "All plaintiff need show is that defendant holds money which in equity and good conscience belongs to him." *Id.* "Money had and received is an equitable doctrine applied to prevent unjust enrichment." *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) (quoting *Miller-Rogaska, Inc. v. Bank One, Tex., N.A.*, 931 S.W.2d 655, 662 (Tex. App.—Dallas 1996, no pet.)). An action for money had and received is not premised on wrongdoing. *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 507 (Tex. App.—Fort Worth 2012, no pet.). It simply examines whether the defendant has money which rightfully belongs to another. *Id.* (quoting *Staats*, 243 S.W.2d at 687).

Plaintiff alleges that Stumberg holds money that in equity and good conscience belongs to Plaintiff. Fifth Am. Compl. ¶ 33. Plaintiff relies on Totus's ledger in support of its allegations that Totus used a large portion of the Monies to make lump-sum payments to Stumberg between January 4, 2016, and January 29, 2016. *See id.* ¶ 16 (citing Pl.'s Ex. 19 [ECF No. 91-19]). According to Plaintiff, Totus's ledger reveals that at least $200,000 of the Prepayment was immediately paid to Stumberg. *See id.* Plaintiff alleges that it paid the Prepayment to Totus as a result of fraudulent inducement, fraudulent misrepresentation, and fraud by nondisclosure on the part of Totus. *See id.* ¶¶ 35-63. Accordingly, Plaintiff alleges that Stumberg received the payments from Totus as a result of a fraudulent transaction. *See id.* ¶¶ 64-65. Plaintiff further alleges that Stumberg knew or should have known that the transactions were fraudulent because of his role as Director and frequent involvement with Totus. *Id.* ¶ 65.

Stumberg moves to dismiss, arguing that Plaintiff cannot assert a money had and received claim because Plaintiff made the payment pursuant to a contract. *See* Stumberg Mot. 9. Money had and received is a claim based on quasi-contract. *Villareal v. First Presidio Bank*, 744 F. App'x 204, 205 (5th Cir. 2018) (per curiam). Money had and received "is precluded by Texas law:

"[W]hen a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory[.]" *Id.* (quoting *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000)). Because Plaintiff made the Prepayment pursuant to the Purchase Order and under the terms of the Agreement, Stumberg argues that Plaintiff is precluded from asserting an equitable claim for relief. *See* Stumberg Mot. 9.

In response, Plaintiff contends that Texas law does not preclude its money had and received claim because there is no contract between Plaintiff and Stumberg. Pl.'s Resp. ¶ 17. Plaintiff explains, "To be clear, the Agreement in question—which [Plaintiff] seeks to rescind—was between [Plaintiff] and Totus. There was no agreement or contract between [Plaintiff] and Stumberg." *Id.*

The case at hand presents an unusual fact pattern for a money had and received claim. Plaintiff and Totus entered into the Agreement, and under the terms of the Agreement, Plaintiff could be required to prepay Totus for products in the absence of an established and current line of credit with Totus, or upon Totus requiring prepayment after notice. Fifth Am. Compl. ¶ 10. Plaintiff then made the Prepayment for 50 percent of the total amount of the Purchase Order. *Id.* ¶ 12. Plaintiff acknowledges that Totus then used its assets, including the Prepayment, to repay Totus's secured lender—later discovered by Totus to be Stumberg. *Id.* ¶¶ 13, 16. Plaintiff now asserts the money had and received claim against Stumberg, who is not a party to the business dealings between Plaintiff and Totus.

Texas courts have allowed restitution for money had and received claims most commonly in cases where a plaintiff *directly* pays a defendant in error—either as a result of the plaintiff's own mistake or fraud on the part of the defendant. *See, e.g.*, *Doss v. Homecomings Fin. Network, Inc.*, 210 S.W.3d 706, 710-11 (Tex. App.—Corpus Christi 2006, pet denied) (payment applied to

10

wrong account); *Lyman D. Robinson Family Ltd. P'ship v. McWilliams & Thompson, P.L.L.C.*, 143 S.W.3d 518, 520 (Tex. App.—Dallas 2004, pet denied) (money held in escrow released to wrong client); *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 163-65 (Tex. App.—El Paso 1997, no writ) (plaintiff made oil and gas royalty payment to wrong person); *Benson v. Travelers Ins. Co.*, 464 S.W.2d 709, 710-13 (Tex. App.—Dallas 1971, no writ) (plaintiff made an overpayment); *Staats*, 243 S.W.2d at 686-88 (claim by a defrauded party against the party who committed the fraud). In each of the above cited cases, a party made a payment in error *directly* to another party, and then pursued a money had and received claim against that party, not against a subsequent third-party like in the case at hand. Further complicating the Court's analysis is the undisputed fact that Plaintiff did make the Prepayment pursuant to the Purchase Order and under the terms of the Agreement.

In *Bank of Saipan*, the Fifth Circuit, applying Texas law, reversed the lower court's judgment as a matter of law dismissing plaintiff Bank of Saipan's ("Bank") money had and received claim. 380 F.3d at 838. The Bank sued defendant CNG Financial Corp. ("CNG") for damages resulting from a complex fraud perpetrated by third parties against both entities. *Id.* The Bank loaned money to a third party to purchase the subsidiaries of CNG, and CNG received the loan proceeds as partial payment for the subsidiaries. *Id.* The Bank asserted a claim for money had and received against CNG, arguing that it was entitled to the money it loaned the purchaser as a result of the fraudulent scheme, which was, at that time, proceeds in CNG's possession. *Id.*

In conducting its analysis, the Fifth Circuit, citing Texas authorities, noted,

> While [the Texas authorities] do indicate that a money had and received claim can result from a defendant's duress, fraud, or undue influence, they do not hold that the equitable claim can *only* arise in the context of reprehensible conduct by the defendant. Other, less insidious acts can serve as the basis for the claim.

11

For example, property stolen from the plaintiff and transferred to a third-party and received in good faith might still be recovered via an analogous equitable restitution action.

*Id.* at 842 (internal citations omitted).

Accepting all well-pleaded facts as true and viewing them in the light most favorable to Plaintiff, the Court finds that at the pleading stage, Plaintiff has sufficiently stated a claim for money had and received against Stumberg. Plaintiff did make the Prepayment pursuant to the Purchase Order to Totus, but there is no contract between Plaintiff and Stumberg that would preclude the claim. Moreover, Plaintiff alleges that the Prepayment was remitted as a result of fraud by Totus and negligent misrepresentation by Totus's corporate officers. Plaintiff contends that Stumberg knew or should have known that the money he received from Totus was the result of a fraudulent transaction. The Court finds that Plaintiff has pleaded sufficient facts to establish more than a sheer possibility that Stumberg holds money which in equity and good conscience belongs to Plaintiff. The Court, therefore, denies Stumberg's Motion to Dismiss on this ground.

### *C. Count IV: Fraud (Totus, Wald, Gaulding, Shaw, and Stumberg)*

In Count IV, Plaintiff asserts a claim for fraud against all Defendants. Plaintiff alleges that Totus is liable to Plaintiff for fraudulent inducement, fraudulent misrepresentation, and fraud by nondisclosure. Fifth Am. Compl. ¶ 35. Plaintiff also alleges that Stumberg, as a beneficiary of Totus's fraud, is vicariously liable to Plaintiff for fraudulent inducement and fraudulent misrepresentation. *Id.* ¶ 64. Finally, Plaintiff contends that the corporate form should be disregarded, and Wald, Gaulding, and Shaw should each be held vicariously liable to Plaintiff for Totus's fraud. *Id.* ¶ 68.

### *i. Fraud against Stumberg*

Plaintiff alleges that Stumberg, as a beneficiary of Totus's alleged fraud, is also vicariously liable for fraudulent inducement and fraudulent misrepresentation. *Id.* ¶ 64. According to Plaintiff, Stumberg received a benefit from Totus, namely the payments made from Totus to Stumberg in January 2015. *Id.* Plaintiff alleges that the payments Stumberg received from Totus resulted from fraudulent transactions funded almost exclusively with the Monies. *Id.* ¶ 65. Based on information and belief, Plaintiff argues that Stumberg knew or should have known that the transactions were fraudulent. *Id.* ¶ 66. Plaintiff points to Stumberg's alleged role as a director of Totus and his "frequent and steady involvement with Totus" in support of its position that Stumberg was aware of the fraudulent transactions. *Id.*

The elements of fraud are:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). Moreover, when alleging fraud, a plaintiff must "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). For a fraudulent inducement claim, in addition to the elements of fraud, a binding contract must exist between the parties. *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001). Fraudulent misrepresentation has the same elements as fraud. *See Snyder Commc'ns, L.P. v. Magaña*, 142 S.W.3d 295, 298 (Tex. 2004).

Generally, shareholders and their affiliates are not liable for a corporation's contractual obligations. *See* TEX. BUS. ORGS. CODE ANN. § 21.223(a)(2). However, Texas courts will

disregard the corporate form to impose vicarious liability if the plaintiff proves that the individual defendant "caused the corporation to be used for the purpose of perpetrating a fraud on the plaintiff, primarily for the personal benefit of the defendant." *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 752 (5th Cir. 1996) (citation omitted); *see also* TEX. BUS. ORG. CODE ANN. § 21.223(b). "Thus, if [Plaintiff] can show that [Stumberg] perpetrated an actual fraud for his direct personal benefit, [Stumberg] is liable for [Totus's fraud] under Texas law." *Husky Int'l Elecs., Inc. v. Ritz (In re Ritz)*, 832 F.3d 560, 566 (5th Cir. 2016).

Plaintiff offers no factual allegations concerning how Stumberg "caused the corporation to be used for the purpose of perpetrating a fraud" that would warrant the Court to pierce the corporate veil. *Sid Richardson*, 99 F.3d at 752. Plaintiff merely alleges that because Stumberg was listed as a director of Totus and because of his alleged heavy involvement with Totus, he was aware of the fraudulent transactions. *See* Fifth Am. Compl. ¶ 66. Plaintiff does not allege that Stumberg made a material misrepresentation or directed an officer of Totus to make a misrepresentation. There are no factual allegations regarding Stumberg's alleged participation in causing the fraud against Plaintiff—only that he was "aware" of the fraud's occurrence. Without more, the Court finds that Plaintiff's allegations of fraud against Stumberg do not meet the heightened pleading standard of Rule 9(b). Therefore, the Court grants Stumberg's Motion to Dismiss on this ground, and dismisses Plaintiff's fraud claim against Stumberg.

### ii. Fraud against Wald and Shaw

Plaintiff contends that the corporate form should be disregarded, and Wald and Shaw should be held vicariously liable for Totus's alleged fraud, because their use of Totus's corporate form was a "sham to perpetrate actual fraud" against Plaintiff. *Id.* ¶¶ 68-69.

Plaintiff alleges that Wald and Shaw fraudulently induced Plaintiff into tendering the Monies by making false representations that it would be used as prepayment for 50 percent of the Purchase Order. *Id.* ¶ 70. According to Plaintiff, throughout November and December 2015, Wald and Shaw stated verbally and by email that Totus's third-party supplier required a 30 percent deposit before it could move forward with a purchase order request. *Id.* ¶ 36. Plaintiff alleges that on or about December 21, 2015, Wald stated via email to Plaintiff that he and Shaw would be working to initiate the Purchase Order, and asked when Plaintiff would be able to send the Prepayment. *Id.* Later that same day, Plaintiff alleges that Shaw stated via email to Plaintiff that Totus would now require a 50 percent deposit to move forward with the Purchase Order. *Id.* Plaintiff argues that the statements made by both Wald and Shaw were false representations because on or about April 21, 2016, Plaintiff discovered that Totus's third-party supplier required no such deposit. *Id.* ¶ 37.

Plaintiff contends that Wald and Shaw also committed fraud by nondisclosure. Plaintiff alleges that Wald failed to disclose that (1) the Monies had been disbursed to Stumberg; (2) Totus had essentially been winding down the company prior to and shortly after receipt of the Monies; and (3) Wald was using portions of the Monies to pay himself. *Id.* ¶¶ 75-76. Plaintiff alleges that Shaw failed to disclose (1) the purpose for which the Monies would be used; and (2) that within days of receipt, the majority of the Monies were disbursed to Stumberg. *Id.* ¶ 90.

For a fraud by nondisclosure claim, in addition to the elements of fraud, the plaintiff must prove the defendant had a duty to disclose information and did not disclose. [1] *Lane ex rel. Lane v.*

---

[1] Plaintiff alleges that Wald, Shaw, and Gaulding each had a duty to disclose to Plaintiff because of their fiduciary relationship with Plaintiff. However, the Court has determined that Plaintiff failed to establish the existence of a fiduciary relationship between Plaintiff and Totus. *See supra* § III.A. Therefore, to the extent that Plaintiff relies on a fiduciary relationship between Plaintiff and Defendants to establish a duty to disclose, these allegations are dismissed and will not be addressed by the Court.

*Halliburton*, 529 F.3d 548, 564 (5th Cir. 2008). A duty to disclose can arise in an arm's-length business transaction without a fiduciary or confidential relationship. *Berry v. Indianapolis Life Ins. Co.*, 600 F. Supp. 2d 805, 820 (N.D. Tex. 2009). A duty to disclose can arise when a party makes a representation and later learns that representation is false or misleading. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 341 (5th Cir. 2008).

Plaintiff alleges that both Wald and Shaw had a duty to disclose to Plaintiff because Wald and Shaw knew that Plaintiff was relying on the Monies to be applied toward its Purchase Order, that Plaintiff was ignorant of the true status of the Monies, and that Plaintiff had no equal opportunity to discover the true status. Fifth Am. Compl. ¶¶ 74, 90. Moreover, Plaintiff alleges that Wald knew his statements were false when made, and Shaw knew that the representations were false when made, or at a minimum, made the representations recklessly without knowledge of their truth. *See id.* ¶¶ 73, 89. Plaintiff contends that even if Shaw did not know that his statements were false when made, he had a duty to correct their previous statements when he learned that they were false or misleading. *Id.* ¶ 90.

Accepting all well-pleaded facts as true, and viewing them in the light most favorable to the Plaintiff, the Court finds that Plaintiff pleads sufficient facts to state a plausible claim for relief for fraud against Wald and Shaw. The Court finds that Plaintiff satisfies the heightened pleading standards of Rule 9(b). Plaintiff has established more than a sheer possibility that Wald and Shaw caused the corporation to be used for perpetuating the alleged fraud, and therefore, piercing the corporate veil is warranted. Therefore, the Court denies Wald's and Shaw's Motions to Dismiss on this ground.

### *iii. Fraud against Gaulding*

Plaintiff alleges that Gaulding's use of Totus's corporate form was a sham to perpetuate actual fraud by nondisclosure against Plaintiff. *Id.* ¶ 80. Plaintiff alleges that Gaulding failed to disclose to Plaintiff that (1) the majority of the Monies were disbursed to Stumberg; and (2) she was using portions of the Monies to pay herself. *Id.* ¶ 81. According to Plaintiff, Gaulding had a duty to disclose that arose by operation of law because Gaulding knew that Plaintiff was relying on Totus to hold the Monies until earned "because it was Gaulding's primary, if not sole, responsibility as CFO to know the status of the money in Totus'[s] bank accounts." *Id.* ¶ 80.

Plaintiff fails to plead with particularity that Gaulding is vicariously liable for the alleged fraud by nondisclosure on the part of Totus. Specifically, Plaintiff has not established that Gaulding had a duty to disclose. Unlike Wald and Shaw, Plaintiff does not allege that Gaulding made an affirmative representation that she knew to be false and then failed to correct the misstatement. *See Dorsey*, 530 F.3d at 341. Rather, Plaintiff only alleges that Gaulding knew of the alleged fraudulent use of the Monies because of her role as CFO. Without more, Plaintiff's allegations are insufficient to plausibly establish that Gaulding had a duty to disclose. Therefore, the Court grants Gaulding's Motion to Dismiss on this ground, and dismisses Plaintiff's fraud claim against Gaulding.

### *D. Count V: Negligent Misrepresentation (Totus, Wald, Shaw)*

In Count V, Plaintiff asserts a claim for negligent misrepresentation against Totus, Wald, and Shaw. The elements of a negligent misrepresentation claim are:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the

information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation."

*Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). The heightened pleading requirements of Rule 9(b) are applied to negligent misrepresentation claims when a plaintiff's fraud claim is based on the same set of alleged facts. *Benchmark Elecs., Inc. v.*, 343 F.3d at 723.

Plaintiff alleges that throughout November and December 2015, Shaw and Wald stated verbally and by email that Totus's third-party supplier required a 30 percent deposit before it could move forward with a purchase order request. Fifth Am. Compl. ¶ 96. According to Plaintiff, on or about November 24, 2015, Shaw stated via email to Plaintiff that Totus's third-party supplier could not ship partial orders without a contract and deposit. *Id.* On or about December 21, 2015, Shaw and Wald had a conference call with Plaintiff wherein they allegedly urged Plaintiff to remit the deposit as soon as possible to avoid months of delay. *Id.* Later that day, Plaintiff alleges that Shaw stated via email to Plaintiff that Totus would require a 50 percent deposit to move forward with Plaintiff's Purchase Order. *Id.* Plaintiff claims that these representations led Plaintiff to believe not only that the third-party supplier required the deposit, but also that the deposit would specifically be applied toward fulfillment of Plaintiff's Purchase Order. *Id.*

In addition or in the alternative, Plaintiff alleges that Wald and Shaw made these representations to Plaintiff in a transaction in which both Wald and Shaw had a pecuniary interest. *Id.* ¶¶ 97-98. Plaintiff alleges that Wald had a pecuniary interest in the Prepayment because Wald received payments from Totus during February and March of 2016. *Id.* ¶¶ 76, 97. According to Plaintiff, these payments to Wald were funded entirely with the Monies. *Id.* ¶ 76. Plaintiff also alleges that Shaw had a pecuniary interest in the Prepayment because Shaw secured a position with the third-party supplier as a result of Totus's winding down. *Id.* ¶ 98. Plaintiff argues that Shaw

18

many not have secured a position with the third-party supplier had he not secured the money that was apparently used by Totus to wind down the company. *Id.*

According to Plaintiff, the information provided was for the guidance of Plaintiff in its business transactions with Totus, and was false. *Id.* ¶ 99. Plaintiff alleges that Wald and Shaw made these representations for the purpose of convincing Plaintiff to tender a large deposit. *Id.* Plaintiff claims that it was not until several months after the deposit was paid that Plaintiff learned that the third-party supplier required no such deposit. *Id.* Given their roles in the company and Totus's prior business with the third-party supplier, Plaintiff alleges that Wald and Shaw knew that the information they were providing to Plaintiff was false, or at a minimum, did not exercise reasonable care or competence in learning or communicating that no such deposit was required. *Id.* ¶ 100.

At the pleading stage, the Court finds that Plaintiff has pleaded sufficient facts to state a plausible claim for negligent misrepresentation against Wald and Shaw. The Court finds that Plaintiff has met the heightened pleading standard required by Rule 9(b). Therefore, the Court denies Wald's and Shaw's Motions to Dismiss on this ground.

### E. Count VI: Civil Conspiracy (Totus and Stumberg)

In Count VI, Plaintiff asserts a claim for civil conspiracy against Totus and Stumberg. Plaintiff alleges that Totus and Stumberg conspired with the objective of Totus breaching its fiduciary duty, committing fraud, and converting the Monies. Fifth Am. Compl. ¶ 103. Plaintiff alleges that Totus and Stumberg had a meeting of the minds and committed unlawful acts by disbursing portions of the Monies in furtherance of Totus's breach of fiduciary duty, fraud, and conversion. *Id.* ¶¶ 104-05.

The elements of a civil conspiracy claim are: "(1) a combination of two or more persons; (2) an object to be accomplished (an unlawful purpose or a lawful purpose by unlawful means); (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998). To prevail on a civil conspiracy claim, there must be an underlying tort. *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 864 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

The Court finds that Plaintiff has failed to plead sufficient facts to allow the Court to draw the reasonable inference that Totus and Stumberg are liable for civil conspiracy. Plaintiff offers only a formulaic recitation of the elements which does not satisfy the Rule 12(b)(6) pleading standard. In particular, the Fifth Amended Complaint is devoid of factual allegations concerning Totus's and Stumberg's alleged meeting of the minds. Plaintiff offers no factual allegations of a plan, an agreement, or alleged meetings to support the allegation that the Defendants conspired together to accomplish an unlawful purpose. *See Berry v. Bryan Cave LLP*, Civ. A. No. 3:08-CV-2035-B, 2010 WL 1904885, at *6 (N.D. Tex. May 11, 2010). Plaintiff's bare allegations are insufficient. Therefore, the Court grants Stumberg's Motion to Dismiss on this ground, and dismisses Plaintiff's civil conspiracy claim against both Totus and Stumberg.

### F. Count VIII: Unjust Enrichment (Stumberg)

In Count VIII, Plaintiff asserts a claim for unjust enrichment against Stumberg. Plaintiff alleges that Stumberg has been unjustly enriched, to Plaintiff's detriment, by the unauthorized use of and/or dominion over the Monies. Fifth Am. Compl. ¶ 111. Plaintiff alleges that it is the rightful owner of the Prepayment and equity and good conscience require Stumberg to return the Prepayment to Plaintiff. *Id.* ¶ 112.

"'Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits,' regardless of whether the defendant engaged in wrongdoing." *Janvey v. Alguire*, 846 F. Supp. 2d 662, 673 (N.D. Tex. 2011) (quoting *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied)). "Unjust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." *Id.* "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Id.* (quoting *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)).

"Texas courts have read claims for 'unjust enrichment' as pleading an equitable common law claim for money had and received." *Id.* at 674 (citing *London v. London*, 192 S.W.3d 6, 12-14 (Tex. App.—Houston [14th Dist] 2005, pet. denied)); *see also Hancock v. Chi. Title Ins. Co.*, 635 F. Supp. 2d 539, 560 (N.D. Tex. 2009) (holding that unjust enrichment is "a theory of liability that a plaintiff can pursue through several equitable causes of action, including money had and received, but not as a separate and distinct claim"). "Claims for money had and received and unjust enrichment are materially and substantively identical." *Villareal v. First Presidio Bank*, 283 F. Supp. 3d 548, 553 n.5 (W.D. Tex. 2017); *Janvey*, 846 F. Supp. 2d at 674. Plaintiff's factual allegations in support of its money had and received claim and unjust enrichment claim are indistinguishable. Therefore, the Court will address Plaintiff's claims as one claim for money had and received, and will dismiss Plaintiff's unjust enrichment claim against Stumberg as repetitive and superfluous. *See Metro. Life Ins. Co. v. Battle*, Civ. A. No. 3:16-CV-2524-D, 2018 WL 3438913, at *2 (N.D. Tex. July 17, 2018).

### G. Count IX: Quantum Meruit (Totus, Wald, Gaulding, Shaw)

In Count IX, Plaintiff asserts a claim for quantum meruit against Totus, Wald, Gaulding, and Shaw. Plaintiff alleges that it provided Totus with the Prepayment specifically for Totus to apply towards fulfillment of the Purchase Order. Fifth Am. Compl. ¶ 113. Instead of holding the Monies in trust for the Purchase Order, Plaintiff alleges that Totus accepted the Prepayment and immediately began distributing large amounts to Stumberg and Totus. *Id.* ¶ 114. Plaintiff alleges that Totus, Wald, Gaulding, and Shaw were fully aware of Plaintiff's expectation to be compensated by fulfillment of the Purchase Order. *Id.* ¶ 115. According to Plaintiff, because of the various alleged acts of fraud committed by Totus, Wald, Gaulding, and Shaw, Plaintiff's claim for relief under quantum meruit is separate and distinct from the Agreement and Purchase Order, and Plaintiff's claim is not barred by the existence of these contracts. *Id.* ¶ 116.

"Quantum meruit is an equitable claim whereby one who provides services to another may recover 'based on an implied agreement to pay for benefits received.'" *Sullivan*, 600 F.3d at 550 (quoting *Heldenfels Bros.*, 832 S.W.2d at 41). "Quantum meruit 'does not arise out of a contract, but is independent of it.'" *Id.* (quoting *Vortt Expl. Co. v. Chevron USA, Inc.*, 787 S.W.2d 942, 944 (Tex. 1990)). "Generally, a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished." *Vortt*, 787 S.W.2d at 944 (citing *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988)). To state a claim under quantum meruit, a plaintiff must allege that: (1) the plaintiff rendered valuable or materials; (2) the services or materials were rendered to the defendant; (3) the defendant accepted, used, and enjoyed the services and materials; (4) the circumstances reasonably notified the defendant that the plaintiff expected to be paid by the defendant for the services or materials. *See id.*

The Court finds that Plaintiff fails to state a claim that Totus, Wald, Gaulding, and Shaw are liable for quantum meruit. In particular, Plaintiff fails to properly allege the first element of the claim: that valuable services were rendered or materials furnished. Plaintiff only alleges that Totus accepted the Prepayment from Plaintiff—Plaintiff does not allege that it provided services or provided materials. *See* Fifth Am. Compl. ¶ 114. Money payments are not considered services or materials for purposes of quantum meruit. See *Galderma Labs., L.P. v. Aquent, Inc.*, Civ. A. No. 4:06-CV-822-Y, 2009 WL 498113, at *12 (N.D. Tex. Feb. 27, 2009) ("[T]he very nature of a quantum-meruit claim demonstrates it is not meant for the recovery of a payment of money.").

Moreover, Plaintiff made the Prepayment under the terms of the Agreement and pursuant to the Purchase Order. A claim for quantum meruit is independent of a contract. *Vortt*, 787 S.W.2d at 944; *see also Protocol Techs., Inc. v. J.B. Grand Canyon Dairy, L.P.*, 406 S.W.3d 609, 614 (Tex. App.—Eastland 2013, no pet.) ("The existence of an express contract is an affirmative defense to an equitable claim of quantum meruit[.]"). Plaintiff offers no viable support for its argument that its claim for relief under quantum meruit is separate and distinct from the Agreement and Purchase Order because of the various acts of alleged fraud by the Defendants.

The Court finds that Plaintiff has failed to state a plausible claim for relief for quantum meruit in the Fifth Amended Complaint. Therefore, the Court grants Wald's, Gaulding's, and Shaw's Motions to Dismiss on this ground, and dismisses Plaintiff's quantum meruit claim in its entirety.

## IV. CONCLUSION

For the reasons stated above, the Court grants in part and denies in part Wald's, Stumberg's, and Shaw's Motions to Dismiss, and grants Gaulding's Motion to Dismiss. Plaintiff is on its sixth complaint. *See* ECF Nos. 1, 5, 9, 21, 31, 91. Accordingly, the Court finds that further amendment

would be futile and, therefore, will not allow Plaintiff the opportunity to amend for the sixth time. *See Great Plains Tr. Co*, 313 F.3d at 329.

For clarity, the Court will summarize the current procedural posture of Plaintiff's claims after the Court's ruling. Count I, Plaintiff's claim for rescission of contract against Totus, was not addressed by Defendants' motions and moves forward. Count II, Plaintiff's claim for breach of fiduciary duty, is dismissed in its entirety. Count III, Plaintiff's claim for money had and received against Stumberg, survives Stumberg's Motion to Dismiss. Count VI, Plaintiff's claim for fraud, is dismissed as to Stumberg and Gaulding, and survives as against Totus, Shaw, and Wald. Count V, Plaintiff's claim for negligent misrepresentation against Totus, Wald, and Shaw, remains. Count VI, Plaintiff's claim for civil conspiracy against Totus and Stumberg, is dismissed in its entirety. Count VII, Plaintiff's claim for conversion against Totus, was not addressed by Defendants' motions and will proceed. Count VIII, Plaintiff's claim for unjust enrichment against Stumberg, is dismissed. Count IX, Plaintiff's claim for quantum meruit against Totus, Shaw, Wald, and Gaulding, is dismissed in its entirety.


**SO ORDERED.**

SIGNED March 28, 2019.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**